UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIVETTE WYATT, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00874-MJD-JMS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# Order

Plaintiff DiVette Wyatt ("Wyatt") requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth, the Court **REMANDS** the case for further proceedings consistent with this opinion.

## I. Background

### A. Procedural History

On May 23, 2007, Wyatt filed applications for DIB and SSI, alleging disability beginning on May 22, 2007. Wyatt's applications were denied initially and upon reconsideration. Thereafter, Wyatt requested a hearing, which was held before Administrative Law Judge ("ALJ") Albert Velasquez on January 19, 2010. In May 2010, the ALJ denied Wyatt's applications. The Appeals Council denied Wyatt's request for review of the ALJ's decision,

making the ALJ's decision the final agency decision. On June 29, 2011, Wyatt filed this timely appeal requesting review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## B. Factual Background

At the time of the hearing, Wyatt was forty-eight years old with a high school education. She had past relevant work experience as a cashier, customer service representative, general office clerk, dry cleaner clerk, receptionist, typist, and credit coordinator.

Wyatt alleges disability primarily due to her depression and anxiety. Wyatt began having mental health problems after the accidental death of her daughter in 1991. After her daughter's death, Wyatt was hospitalized for two weeks. In 1995, Wyatt was again hospitalized after she attempted suicide.

Since 2006, Wyatt has seen licensed clinical social worker Cynthia Condry ("Condry"). During that time, Condry's therapy notes show that Wyatt, at times, had suicidal thoughts, depression, anxiety, and intrusive and disturbing nightmares. At other times, Wyatt reported obtaining a new job that she liked, had a bright mood, and had no intrusive thoughts.

On June 6, 2006, Condry completed an Adult Clinical Assessment, diagnosing Wyatt with Bipolar Disorder and assigning her a Global Assessment of Functioning ("GAF") score of fifty, which indicates severe symptoms or a serious impairment in functioning. Condry noted that Wyatt had experienced mood swings, lack of interest/pleasure in activities, frequent crying spells, sleep disturbances, fatigue, excessive/inappropriate guilt, and had prior suicide attempts. On January 9, 2008, Condry stated that, "[d]ue to Miss Wyatt's mental disability, she cannot work on a regular basis or maintain employment for an extended period of time. She continues to report mood swings contributing to conflict at home and with co-workers and employers." [R.

432.] Later in 2008, Condry assigned Wyatt a GAF score of fifty-five, which indicates moderate symptoms or moderate impairments in functioning.

Wyatt also regularly saw Dr. Matthew Nelsen—her primary care physician—who prescribed her medications for her depression and anxiety. Similar to Condry's therapy notes, Dr. Nelsen's treatment notes show periods of depression and periods where Wyatt appeared to be improving. On July 20, 2007, Dr. Nelsen noted that Wyatt did not have any physically-related impairments, but "may have an impairment in mental health and should be evaluated by psychiatry." [R. 245.] On July 8, 2009, Dr. Nelsen stated that Wyatt was limited by her mental impairments and that her impairments would "affect her ability to interact with others and work." [*Id.* at 505.]

Wyatt also saw urologist Dr. Teresa Brown. On July 23, 2007, Dr. Brown stated in a letter to the Disability Determination Bureau ("DDB") that Wyatt had significant lower urinary tract symptoms, including severe urinary frequency, urgency, nocturia, and urinary hesitancy. According to Dr. Brown, these symptoms would make it very difficult for Wyatt to carry out normal activities due to the frequency in which she would have to use the bathroom.

At the request of the Social Security Administration, on September 24, 2007, Wyatt underwent a Mental Status Examination by Dr. Bryan London. Dr. London found that Wyatt was able to recall two out of three objects that had been said to her five minutes earlier, her remote memory was intact, and she was able to successfully repeat six digits forward and three digits backward. Dr. London diagnosed Wyatt with bipolar disorder, post-traumatic stress disorder, panic disorder with agoraphobia, general anxiety disorder, and obsessive/compulsive disorder. Dr. London described Wyatt's prognosis as guarded and he strongly advised Wyatt to continue receiving professional services. Dr. London assigned Wyatt a GAF score of fifty-five.

3

On October 15, 2012, Dr. Joelle Larsen, a state agency psychiatrist, reviewed Wyatt's record and completed a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity ("MRFC"). On the PRFT, Dr. Larsen found Wyatt moderately limited in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. On the MRFC form, Dr. Larsen found that "although the claimant has a severely limiting condition, it appears that the claimant retains the ability to perform simple, repetitive tasks on a sustained basis without extraordinary accommodations." [R. 337.]

Additionally, at the DDB's request, Wyatt's last two employers completed an employer questionnaire. Both employers indicated that they would not rehire Wyatt. Her most recent employer, Ossip Optometry ("Ossip"), stated that Wyatt could maintain a work routine, but if something out of the ordinary arose, Wyatt would become easily frazzled. Ossip also stated that Wyatt could follow instructions, but noted that she took longer than others did to complete her assigned work and that she could not work near others because she would become easily distracted. Ossip noted that Wyatt did not respond well to criticism or instruction for tasks completed incorrectly.

Similarly, Wyatt's former employer, City of Westfield ("City"), stated that Wyatt did not accept criticism well and was easily distracted. The City did not observe any inability to concentrate other than Wyatt's desire to socialize. The City also stated that Wyatt did not have any problems getting her assigned work completed on time, but noted that they would not hire her back, in part, because of too many errors in her work.

## II. Disability and Standard of Review

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

4

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i)[1]. At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, the Court cites only to the SSI sections in discussing the standard for determining whether a claimant is disabled.

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, …or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. The ALJ's Decision

At step one, the ALJ found that Wyatt had not engaged in substantial gainful activity since May 22, 2007, her alleged onset date. [R. 16.] At step two, the ALJ found that Wyatt had the following severe impairments: bipolar disorder, post-traumatic disorder, panic disorder with agoraphobia, generalized anxiety disorder, and obsessive-compulsive disorder. [*Id.*] At step three, the ALJ found that Wyatt did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [*Id.* at 16-17.] Next, the ALJ found that

Wyatt had the residual function capacity to perform a full range of work at all exertional levels, but was limited to simple and repetitive work that required only superficial interaction with the general public, co-workers, or supervisors. [*Id.* at 17.] Additionally, Wyatt had nonexertional limitations due to possible side effects from her medications and could not climb ropes, ladders, or scaffolds and should avoid work around unprotected heights and dangerous machinery, operating a motor vehicle, or work around open flames or large bodies of water. [*Id.*] Based upon the assigned RFC, at step four, the ALJ found that Wyatt was unable to perform any past relevant work. [*Id.* at 22.] At step five, the ALJ found that Wyatt could perform work that exists in significant numbers in the national economy, including work as a housekeeper, mail clerk, and office machine operator. [*Id.* at 23.] Because Wyatt could perform work that existed in significant numbers in the national economy, the ALJ found that Wyatt was not disabled. [*Id.*]

## IV. Discussion

Wyatt claims that the ALJ's RFC is flawed and therefore the Court should remand the matter. First, Wyatt argues that the ALJ erred in determining the RFC because he improperly weighed opinion evidence and because he omitted opinion evidence. Additionally, Wyatt argues that the ALJ erred in his credibility determination resulting in a flawed RFC. The Court will address these arguments in turn.

### A. Opinion Evidence

Specifically, Wyatt contends that the ALJ improperly weighed the opinions of Dr. Nelsen and Condry. Wyatt also contends that the ALJ omitted opinion evidence from her urologist, Dr. Teresa Beam, and from her former employers. Wyatt argues that the ALJ's RFC finding is inaccurate because of these errors.

### 1. Dr. Nelsen's Opinions

With regard to Dr. Nelsen's statements regarding Wyatt's ability to function in a work setting, Wyatt argues that the ALJ failed to consider the factors in 20 C.F.R. §404.1527 for determining how much weight to give Dr. Nelsen's statements.  Generally, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2).[2]  If the ALJ decides not to give the physician's opinion controlling weight and articulates a good reason for such a decision, the ALJ must still decide what weight to give the opinion.  *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)); 20 C.F.R. § 404.1527(c)(2).  In determining the weight to give the opinion, the ALJ should consider the following factors: 1) the treatment relationship including the length, nature, and extent of the relationship and the frequency of examinations; 2) the supportability and consistency of the opinion with the record as a whole; 3) whether the physician is a specialist; and any other factors the claimant or others bring to the ALJ's attention.  20 C.F.R. § 404.1527(c)(2)-(6).

In response, the Commissioner argues that the ALJ's RFC finding is supported by and consistent with Dr. Nelsen's opinion that Wyatt's mental impairments would interfere with others, because the ALJ limited Wyatt to only superficial contact with the public, co-workers, and supervisors. [Dkt. 23 at 10.]  The Commissioner does not directly respond to Wyatt's argument that the ALJ failed to consider all of the factors in 20 C.F.R. §404.1527.  Rather, the Commissioner argues that the ALJ reasonably declined to find greater limitations on Wyatt's

---

[2] Effective March 26, 2012, 20 C.F.R. 404.1527 was amended with paragraphs (d) through (f) redesignated as paragraphs (c) through (e).  *See* 77 Fed. Reg. 10651, 10656 (Feb. 23, 2012).  Because the parties briefed this matter before the amendments took effect, the parties cite to the prior version.  The Court, however, will cite to the paragraphs as amended, adjusting the parties' citations accordingly.

ability to interact with others because Dr. Nelsen was an internal medicine doctor and not a specialist.  To support this argument, the Commissioner cites to Social Security regulations that state, "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  While it makes sense to give more weight to a specialist's opinion about medical issues in his or her area of specialty, the ALJ must still determine what weight, if any, to give other medical opinions.  Here, the ALJ failed to articulate what weight he gave Dr. Nelsen's opinions.

Furthermore, the ALJ does not discuss which of Dr. Nelsen's opinions he discredited, if any.  In his decision, the ALJ states, "In Dr. Nelson's (sic) reports, he stated the claimant seemed to be doing better or was stabilized and has continued to prescribe the claimant's mental health medications.  However, Dr. Nelson (sic) specializes in internal medicine and not psychiatry which is outside the doctor's area of expertise."  [R. 21.]  Wyatt argues that if one charitably parses these two sentences, "one could infer the first sentence indicates the ALJ felt Dr. Nelson's (sic) opinion was not supported by the evidence in the file."  [Dkt. 20 at 20.]  Wyatt goes on to argue that, earlier in his decision, the ALJ impermissibly "cherry-picked" two or three of Dr. Nelsen's treatment notes that indicated Wyatt was doing better or was stabilized to later make it appear that Dr. Nelsen's treatment notes do not support his opinions.

The Court need not decide whether the ALJ "cherry-picked" Dr. Nelsen's treatment notes to make it appear that Dr. Nelsen's notes were inconsistent with his opinion.  If the ALJ intended to discredit any of Dr. Nelsen's opinions as inconsistent with his own treatment notes, he should have made that clear in his decision.  An ALJ is required to  properly articulate his reasoning for accepting or rejecting evidence.  *Scheck*, 357 F.3d at 700.  Here, the ALJ failed to do that.  Thus,

upon remand, the ALJ shall determine what weight to give Dr. Nelsen's opinions, considering the factors in listed in 20 C.F.R. §404.1527 and shall properly articulate his reasoning for that determination.

### 2. Condry's Opinions

Similarly, Wyatt argues that the ALJ provided an inadequate explanation for rejecting Condry's RFC opinion. In discrediting Condy's assessment of Wyatt, the ALJ stated that the "assessment is not given controlling weight because she is not an acceptable medical source. In fact, she based much of her assessment on 'client's verbal reports during therapy sessions.'" [R. 21 (quoting R. 490).] Wyatt concedes that Condry is not an "acceptable medical source" as defined by 20 C.F.R. § 404.1513 and therefore her opinion cannot be given controlling weight. Nonetheless, Wyatt argues the ALJ must still decide how much weight to give her opinion using the factors listed in 20 C.F.R. § 404.1527(c).

For support, Wyatt cites to *Phillips v. Astrue*, 413 F. App'x 878 (7th Cir. 2010). In *Phillips*, a certified physician's assistant opined that the claimant was unable to work due to her mental impairments. *Id.* at 884. The Seventh Circuit explained that the regulations considered physician's assistants as "other medical sources" whose opinions are not entitled to controlling weight. *Id.* However, the court noted that "[i]n deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in [§404.1527(c)(2)]." *Id.* Likewise, as a licensed clinical social worker, Condry's opinions would be considered evidence from "other sources" under 20 C.F.R. § 404.1513. Therefore, Wyatt argues, the ALJ's failure to consider the factors in 20 C.F.R. § 404.1527(c) requires reversal.

In response, the Commissioner argues that the ALJ provided a sufficient explanation for discounting Condry's assessment. The Commissioner argues that, contrary to Wyatt's argument

otherwise, SSR 06-03p allowed the ALJ to diminish the weight given to Condry's opinion because she was not a doctor. However, the Commissioner misunderstands Wyatt's argument. Wyatt does not argue that the ALJ could not give less weight to Condry's opinion because she was not a doctor. Rather, Wyatt argues that the ALJ cannot entirely dismiss Condry's opinion simply because she is not a doctor and that the ALJ must still determine what weight to give Condry's opinion. In fact, SSR 06-03p recognizes the importance of medical opinions from "other sources," stating:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. Thus, while the ALJ was free to give Condry's opinions less weight because she was not an "acceptable medical source," the ALJ was still required to evaluate Condry's opinions.

The Commissioner also argues that the ALJ did not summarily reject Condry's opinion solely on her status as a non-physician, but also because she relied on Wyatt's self-assessments rather than objective medical evidence. For support, the Commissioner cites to *Ziegler v. Astrue*, 336 F. App'x 563 (7th Cir. 2009). In *Ziegler*, the Seventh Circuit upheld the ALJ's decision to give more weight to a state-agency therapist than to an examining psychiatrist's opinion because it was based only on the claimant's self-reported symptoms. *Id.* at 569. However, the court went on to explain that "[e]ven though a psychiatrist's examination will often involve little more than analyzing self-reported symptoms, Dr. Bohon's report does not show much analysis and was

prepared after only one meeting with Ziegler." *Id.* The report was so lacking in analysis that in the space for prognosis it stated, "'Unknown; I just met him.'" and at another point, the report stated, "'I don't know him well enough to explain further.'" *Id.*

The Court does not read *Ziegler* as broadly as the Commissioner does. Nowhere does *Ziegler* suggest that reliance on self-reported symptoms is, in and of itself, a reason to discredit an examining source's opinion. *Ziegler* supports just the opposite conclusion in recognizing that, for cases involving mental impairments, self-reported symptoms plays a significant role in the examining source's opinions. As pointed out by Wyatt, all of the examining and non-examining doctors—including those used by the Commissioner to defend the ALJ's decision—had to rely upon Wyatt's self-reported symptoms for many of their opinions.

Unlike in *Ziegler*, Condry worked with Wyatt for several years. Even though the ALJ could not give Condry's opinions controlling weight, as Wyatt's therapist with a regular treatment relationship, Condry was probably in one of the best positions to opine as to Wyatt's mental impairments. The Court finds that the ALJ erred by summarily dismissing Condry's opinions because she was not an "acceptable medical source" and because she relied upon Wyatt's self-reported symptoms. Upon remand, the ALJ should articulate the weight given to Condry's opinions, considering the factors set out in 20 C.F.R. § 404.1527(c).

### 3. Dr. Beam's Opinion

Wyatt argues that the ALJ omitted from his RFC finding Dr. Beam's opinion that Wyatt's urinary tract symptoms would make it difficult for her to carry out normal activities due to the frequency in which Wyatt would be required to go to the bathroom. In determining the claimant's RFC, the ALJ must consider all medically determinable impairments—physical and mental—even those not determined to be severe. 20 C.F.R. § 404.1545(a)(2). According to

Wyatt, had the ALJ considered this evidence, it would have affected his RFC determination. In response, the Commissioner argues that, although the ALJ did not discuss how much weight he gave Dr. Beam's opinion, any omission is harmless.

With regard to harmless error, the Seventh Circuit has stated that "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The Commissioner argues that Wyatt did not allege that she was limited by her urinary condition, Dr. Beam's opinion did not establish the requisite twelve-month durational requirement, and that Dr. Nelsen stated that Wyatt had no impairments in her ability to do physical work.

In response, Wyatt argues that the Commissioner's arguments amount to *post hoc* rationalization, forbidden by the *Chenery* doctrine. The *Chenery* doctrine forbids an agency's lawyers from defending the agency's decision on grounds not embraced by the agency itself. *Parker*, 597 F.3d at 922 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). However, harmless error is an exception to the *Chenery* doctrine. *Id.* at 924. Thus, the Court may consider whether the omission was harmless.

Although Wyatt indicated at the hearing that her impairments were only mental, the Court cannot say with great confidence that the record overwhelmingly supports the ALJ's RFC finding and that he would reinstate his finding upon remand. As an example of evidence consistent with Dr. Beam's opinion, Wyatt's last employer indicated that "she had problems with her urinary system and required frequent restroom breaks (every 5-10 minutes)." [*Id.* at 152.]

13

The ALJ, however, never considered this evidence. Thus, the Court cannot conclude that it was harmless error for the ALJ's to omit Dr. Beam's opinion.

### 4. Wyatt's Employer's Report/Opinions

Lastly, Wyatt contends that the ALJ ignored the reports/opinions from Wyatt's former employers. In response, the Commissioner argues that, while the ALJ did not discuss the former employers' reports/opinions, any omission is harmless because the ALJ's RFC finding is consistent with the opinions expressed in the reports. The Court disagrees that the omission was harmless.

20 C.F.R. 404.1527 requires the ALJ to consider any "other factors" brought to the ALJ's attention that tends to support or contradict a medical opinion. 20 C.F.R. 404.1527(c)(6). SSR 06-03p explains that evidence from "other sources," including evidence from employers, is an example of "other factors" that should be considered under 20 C.F.R. 404.1527 when evaluating opinions from "acceptable medical sources." Thus, the ALJ was required to consider the employers' reports/opinion when evaluating opinions from "acceptable medical sources," such as the opinions from Dr. Nelsen or from Dr. Beam. From the ALJ's decision, there is no indication that he considered the employers' reports/opinions at all.

The Commissioner argues that the ALJ accommodated any restrictions in the employers' reports/opinions by limiting Wyatt to simple, repetitive work not requiring more than superficial interactions with the public, co-workers, or supervisors. As discussed previously, however, Wyatt's last employer indicated that she required frequent bathroom breaks; the ALJ made no accommodation for that restriction.

Furthermore, the issue is not simply whether the ALJ's RFC finding accommodated any restrictions in the employers' reports; the issue is whether the ALJ properly weighed the opinions

from the available sources of medical information. The ALJ was required to consider the employers' report/opinions and determine whether they support or contradict the medical opinions. Thus, the employers' reports/opinions are relevant to the ALJ's analysis of what weight to give other opinions. For example, the statement that Wyatt needed frequent bathroom breaks appears to support Dr. Beam's opinion and therefore may entitle more weight to be given to Dr. Beam's opinion. Additionally, the employers' reports/opinions might have an effect on the weight given to Dr. Nelsen's opinions. Accordingly, the Court cannot find that the omission was harmless error.

**B. Credibility Determination**

Wyatt argues that the ALJ erred in his credibility determination, resulting in a flawed RFC. Specifically, Wyatt argues that the ALJ did not explain which of Wyatt's statements were non-credible and that his credibility determination was meaningless boilerplate. In response, the Commissioner argues that the ALJ reasonably found Wyatt not credible and his RFC determination was not meaningless boilerplate because the ALJ explained his credibility determination.

Because "[a]n ALJ is in the best position to determine the credibility of witnesses, [the Court will] review that determination deferentially." *Craft,* 539 F.3d at 678. Accordingly, courts will generally not overturn an ALJ's credibility determination unless it is patently wrong. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). However, the ALJ must support his credibility findings with substantial evidence and must explain his decision in a way that allows a court to determine whether the ALJ reached the decision in a rational manner, logically based on specific findings and the evidence. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

Here, the ALJ found Wyatt's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. [R. 21.] The ALJ concluded, "neither the objective evidence of record, nor the claimant's own statements and activities, support a conclusion that she is unable to perform any substantial gainful activity." [*Id.*] The Court agrees with Wyatt that the ALJ does not explain what statements he found not credible and does not explain what statements Wyatt made that do not support the conclusion that she is unable to perform any substantial gainful activity. *See Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011) (finding that the ALJ did not explain which statements were not entirely credible or how credible or noncredible any of the statements were).

The Commissioner argues that Wyatt's own statements were inconsistent with her disability claims, pointing to statements Wyatt made about her daily activities and her testimony that on average days she could walk the dog, drive, go to the grocery store, and occasionally clean. [Dkt. 23 at 16 (citing R. 147; R. 36-37).] What the Commissioner does not mention is that Wyatt also stated that on "other days I may go a day or two and not even be able to come downstairs." [R. 36.] Wyatt's statements, when viewed in context, are not necessarily inconsistent with her claims for disability. Nor does the fact that, on average days, Wyatt is able to perform some activities equate to an ability to work. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (citations omitted) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."). Moreover, the ALJ fails to cite to any of these statements as evidence that Wyatt was not credible. As a result, the Court cannot determine

16

whether the ALJ reached his decision in a rational manner, logically based on specific findings and the evidence.

## V. Conclusion

In sum, the Court finds that the ALJ did not properly articulate his analysis of the evidence from Dr. Nelsen and Condry and omitted from his RFC determination the evidence from Dr. Beam and Wyatt's former employers.  As a result of these combined errors, the Court finds it necessary to remand the matter for further consideration.  In rendering this decision, however, the Court neither makes nor intends to infer any decision regarding the underlying merits of Wyatt's claim.  For the above stated reasons, the Court **REMANDS** the case for further proceedings consistent with this opinion.

Dated:   06/20/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Annette Lee Rutkowski
KELLER & KELLER
annette@2keller.com